JDL:RTP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

13M156

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

  - against -

███████████████████████████

MARIA VALERIO, also known as
"Tia,"

          Defendants.

FILED UNDER SEAL

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT

(T. 21, U.S.C., § 963)

- - - - - - - - - - - - - - - - - -x

EASTERN DISTRICT OF NEW YORK, SS:

      CHRISTOPHER CHEN, being duly sworn, deposes and states that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such.

      Upon information and belief, in or about and between September 2010 and February 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ███████████████ and MARIA VALERIO, together with others, did knowingly and intentionally conspire to import into the United States a substance containing heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952(a).

      (Title 21, United States Code, Section 963)

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with HSI for approximately six years. The facts set forth in this affidavit are based in part on information that I have learned from review of written documents prepared by, and conversations with, other law enforcement agents.

A. **Cooperating Witness Number One**

2. A cooperating witness ("CW1") has advised that between September 2010 and February 2011, he/she agreed with others to import narcotics into the United States from the Dominican Republic.[2] CW1 has advised that in or about September 2010, a ▮▮▮ whom CW1 knows and refers to as ▮▮▮▮▮▮ and a woman whom CW1 knows and refers to as "Maria" and "Tia," recruited him/her to travel to the Dominican Republic and swallow pellets containing drugs in order to import the drugs into the United States. CW1 advised that he/she eventually agreed to make the trip for ▮▮▮▮ and "Maria." ▮▮▮▮ and "Maria" gave CW1 money to purchase his/her ticket and took

---

[1] Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest the defendants, I have not included details of every aspect of this investigation.

[2] CW1 has pled guilty pursuant to a cooperation agreement to a superseding indictment charging conspiracy to import heroin, in violation of 21 U.S.C. §§ 963 and 960(b)(1)(A).

3

him/her to a travel agency to buy the ticket. CW1 also advised that on the day he/she departed for the Dominican Republic, ▓▓▓▓ and "Maria" drove him/her to John F. Kennedy International Airport ("JFK") in Queens, New York, and gave him/her a cellular telephone and the contact information for the individual that CW1 was instructed to contact when he/she arrived in the Dominican Republic.

3. While in the Dominican Republic, CW1 ingested approximately 73 pellets containing drugs. CW1 then flew back to JFK. ▓▓▓▓ and "Maria" picked CW1 up from JFK and drove him/her to a residence in Massachusetts, where CW1 stayed with ▓▓▓▓ and "Maria" for several days until he/she passed all of the pellets that he/she swallowed in the Dominican Republic. When CW1 passed all of the pellets, he/she gave them to ▓▓▓▓ and "Maria," and ▓▓▓▓ and "Maria" paid CW1 the amount they had previously agreed to pay him/her for swallowing the drugs.

4. CW1 has identified the defendant ▓▓▓▓ from a photograph array as the individual he knows as ▓▓▓▓ CW1 has identified the defendant MARIA VALERIO from a photograph array as the individual he knows as "Maria" and "Tia." Law enforcement databases and publicly-available records indicate a residential address of 22 Nichols Avenue in Lynn, Massachusetts for the ▓▓▓▓ ▓▓▓▓ and MARIA VALERIO.

4

5. I have reviewed CW1's travel history. CW1 traveled to the Dominican Republic on October 23, 2010, and returned to the United States on October 30, 2010. Records obtained from Western Union show that on October 28, 2010, a wire transfer in the amount of $2,500 was sent to CW1 to a Western Union location in the Dominican Republic by a "Maria Valerio" from a Western Union location in Lynn, Massachusetts.

6. CW1 further advised that shortly after this trip, ▮▮▮ called CW1 and asked CW1 to recruit other couriers to go to the Dominican Republic and swallow drugs in order to bring them back into the United States. CW1 agreed to do so. CW1 has advised that between November 2010 and February 2011, he/she recruited others, including a second cooperating witness ("CW2"), to go to the Dominican Republic and bring back drugs for ▮▮▮ and "Maria." On each occasion, CW1 was paid by ▮▮▮ and "Maria" for recruiting the couriers.

B. <u>Cooperating Witness Number Two</u>

7. On or about February 21, 2011, CW2[3] arrived at JFK aboard a flight from the Dominican Republic. CW2 consented to an X-ray of his/her intestinal tract, which was positive for foreign bodies. CW2 was placed under arrest. CW2 eventually

---

[3] CW2 has pled guilty pursuant to a cooperation agreement to an indictment charging importation of heroin, in violation of 21 U.S.C. §§ 952(a) and 960(b)(3).

5

passed a total of 48 pellets, which contained approximately 518.5 grams of heroin.

8. In post-arrest statements, CW2 advised that he/she was recruited by CW1 to travel to the Dominican Republic and ingest pellets of drugs and bring them into the United States. CW2 also advised that on the day he/she departed for the Dominican Republic, he/she went to CW1's residence, and from there was driven to JFK in a minivan. Inside the minivan were several individuals, including ▮▮▮ who CW2 overheard CW1 refer ▮▮▮▮▮▮▮▮▮ and a woman who CW2 later learned was "Maria." When the minivan arrived at JFK, ▮▮▮ and "Maria" got out of the minivan with CW2 and escorted him/her through the airport. Inside JFK, "Maria" gave CW2 the contact information for the individual in the Dominican Republic who "Maria" instructed CW2 to contact when he/she arrived in the Dominican Republic. "Maria" also gave CW2 approximately $200 and instructed CW2 to give the money to the same individual.

9. I have reviewed CW2's travel history, which shows that CW2 traveled to the Dominican Republic from JFK on February 14, 2011. I have also reviewed surveillance video that was obtained from JFK for February 14, 2011. The video shows CW2 entering JFK with two individuals, a woman ▮▮▮▮▮ Upon entering the airport, the woman appears to hand money to CW2; she also appears to write something down on a piece of paper and hand

6

the piece of paper to CW2. I have reviewed the photograph that the defendant MARIA VALERIO submitted in connection with her application for a Massachusetts drivers license and the photograph that the defendant ▬▬▬▬▬▬▬▬ submitted in connection with ▬▬▬▬▬▬▬▬▬▬▬▬ Based on my review of the surveillance video and the photographs, the woman handing CW2 the piece of paper and what appears to be money bears a strong resemblance to the defendant MARIA VALERIO and the ▬ accompanying her bears a strong resemblance to the defendant ▬▬▬▬▬▬.

10. CW1 further advised that ▬▬▬▬ and "Maria" told him/her that they were waiting for CW2 outside of JFK on the morning of February 21, 2011, in order to pick CW2 up and drive him/her to Massachusetts where CW2 would stay until he/she passed the pellets that he/she swallowed. When CW2 did not come out of the airport after his/her flight arrived (because CW2 had been arrested), ▬▬▬▬ and "Maria" called CW1 several times to express their concern that CW2 had been arrested. In an Affidavit of Identifying Witness that the defendant MARIA VALERIO submitted in connection with her daughter's United States passport application, the defendant MARIA VALERIO listed her telephone number as (978) 601-2133. Telephone records show several calls between (978) 601-2133 and CW1's cellular telephone shortly after CW2's flight landed at JFK on February 21, 2011.

7

WHEREFORE, your deponent respectfully requests that the defendants ███████████████ and MARIA VALERIO be dealt with according to law. I further request that this affidavit and the arrest warrant be filed under seal as disclosure of this application would give the targets of the investigation an opportunity to destroy evidence, harm or threaten victims or other witnesses, change patterns of behavior, notify confederates and flee from or evade prosecution.

CHRISTOPHER CHEN
Special Agent
Homeland Security Investigations

Sworn to before me this
21st day of February, 2013

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK